UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT W.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00643-JMS-TAB |
| | ) |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) ) |
| | ) |
| Defendant. | ) |

**<u>ENTRY REVIEWING THE COMMISSIONER'S DECISION</u>**

Plaintiff Robert W. applied for disability insurance benefits from the Social Security Administration ("SSA") on March 30, 2017, alleging an onset date of December 1, 2016. [Filing No. 9-2 at 179.] His application was denied initially on May 17, 2017, [Filing No. 9-2 at 87], and upon reconsideration on August 1, 2017, [Filing No. 9-2 at 96]. Administrative Law Judge Timothy Turner (the "ALJ") held a hearing on November 19, 2018. [Filing No. 9-2 at 17.] The ALJ issued a decision on January 11, 2019, concluding that Robert W. was not entitled to receive disability insurance benefits. [Filing No. 9-2 at 14.] The Appeals Council denied review on December 26, 2019. [Filing No. 9-2 at 1.] On February 27, 2020, Robert W. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

## I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy."  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe."  *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling."  *Id*.  The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).  The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner.  *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Barnett*, 381 F.3d at 668.  When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion."  *Id.* (citation omitted).

## II.
### BACKGROUND

Robert W. was 55 years old at the time he alleges that his disability began in December 2016. [Filing No. 9-2 at 17.] He has a master's degree in Business Education. [Filing No. 9-2 at 38.] He served thirty-one years in the United States Navy, and after retiring from the Navy, he worked as a maintenance foreman. [Filing No. 9-2 at 39-40.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Robert W. was not disabled. [Filing No. 9-2 at 25.] Specifically, the ALJ found as follows:

- At Step One, Robert W. had not engaged in substantial gainful activity[3] since December 1, 2016, the alleged onset date. [Filing No. 9-2 at 19.]

- At Step Two, he had "the following severe impairments: chronic liver disease, cirrhosis, a spine disorder, and obesity." [Filing No. 9-2 at 19 (citation omitted).]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 9-2 at 20.]

- After Step Three but before Step Four, Robert W. had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except he can lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently. He can sit for six hours, stand for six hours, and walk for six hours. He can handle items frequently with the left hand, and can handle items frequently with the right hand. He has fingering limitations frequently with the left hand, and has fingering limitations frequently with the right hand. He can climb ramps and stairs occasionally[,] never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, crawl occasionally." [Filing No. 9-2 at 20.]

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Robert W.'s education, work experience, and RFC, he was capable of performing past relevant work as an aircraft maintenance supervisor, utilities and maintenance supervisor, and purchasing agent. [Filing No. 9-2 at 24-25.]

## III.
### DISCUSSION

Robert W. argues that the ALJ erred in crafting the RFC. [Filing No. 11.] Specifically, Robert W. contends that the ALJ failed to adequately consider a letter from his gastroenterologist, Dr. Margaret Sozio, and that the ALJ improperly evaluated an MRI. [Filing No. 11 at 13.] The Court will consider the arguments in turn.

### A. Dr. Sozio

Dr. Sozio was Robert W.'s treating gastroenterologist. Particularly relevant here, on September 12, 2018, Robert W. wrote to Dr. Sozio and stated:

> I am writing to inform you that yesterday I had a meeting with my SSA disability lawyer, I filed for disability in Sept of 2017 based on the fact that SSA considers Cirrhosis of the Liver a terminal condition…[SSA says] that I should be able to do sedentary work. I do not agree with that assessment due to my daily right upper quadrant pain and pain on my left side and severe fatigue issues that are associated with my current NASH/Cirrhosis of the liver diagnosis. I was asked to contact you to see if you would be willing to write a statement on how the pain and fatigue affects me with this condition and my ability to work.

[Filing No. 9-7 at 66-67.] On September 26, 2018, Dr. Sozio wrote a letter as requested by Robert W. [Filing No. 9-7 at 78.] In the letter, Dr. Sozio wrote, "To whom it may concern: Mr. [Robert W.] has been diagnosed with cirrhosis secondary to non-alcoholic steato-hepatitis. Cirrhosis can be associated with significant fatigue, which Mr. [Robert W.] has been experiencing." [Filing No. 9-7 at 78.]

Robert W. argues that the ALJ discounted and failed to properly evaluate the opinion from Dr. Sozio, the treating gastroenterologist. [Filing No. 11 at 10.] Robert W. asserts that the ALJ failed to accord appropriate weight to Dr. Sozio's opinion by failing to analyze the length of the

5

treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the physician's specialty and the extent of the treatment relationship. [Filing No. 11 at 10-11.] Specifically, Robert W. contends that the ALJ should have given more weight to Dr. Sozio's letter, in which she stated that Robert W. had been experiencing significant fatigue associated with cirrhosis. [Filing No. 11 at 10-11.] He argues that because Dr. Sozio is a treating specialist who examined him several times, the ALJ should have attributed more weight to Dr. Sozio's letter. [Filing No. 11 at 11.] Additionally, Robert W. asserts that the ALJ erred in finding that "his treatment notes do not show complaints of significant fatigue," because on multiple occasions he reported fatigue or daytime drowsiness. [Filing No. 11 at 11 (citing Filing No. 9-2 at 22).] Therefore, Robert W. argues that the Court should remand this case. [Filing No. 11 at 23.]

The Commissioner responds that the ALJ properly evaluated Dr. Sozio's September 26, 2018 letter. [Filing No. 13 at 7.] The Commissioner argues that because Dr. Sozio's letter did not outline any specific or functional restrictions, it is consistent with the ALJ's finding limiting Robert W. to light work. [Filing No. 13 at 9-10.] The Commissioner further contends that the ALJ properly considered Dr. Sozio's September 26, 2018 letter because the statements were conclusory and vague. [Filing No. 13 at 10.] The Commissioner argues that the opinions of the state physicians, Dr. Corcoran and Dr. Sand, provided substantial evidence in support of the ALJ's determination. [Filing No. 13 at 9.] Finally, the Commissioner asserts that the ALJ's consideration of pain when discussing fatigue is reasonable as the ALJ must consider all the relevant medical and other evidence of record. [Filing No. 13 at 10.]

In reply, Robert W. argues that Dr. Sozio's letter suggested a need for additional rest or time off task over the workday and that the letter can be interpreted to show functional limitation in the form of a need for additional rest of breaks when engaging in work activity. [Filing No. 14

6

at 2.] Robert W. also reiterates his argument that the ALJ failed to consider his complaints of fatigue. [Filing No. 14 at 3.]

As an initial matter, to the extent Robert W. argues that the ALJ erred by failing to treat Dr. Sozio's September 26, 2018 letter as a medical opinion and, in turn, failing to perform the analysis required with respect to medical opinions, this argument fails. For claims filed after March 27, 2017, a medical opinion is defined as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in the ability to perform physical, mental, and other demands of work activities and the ability to adapt to environmental conditions. 20 C.F.R. § 404.1513. *See also Lindsey Jo B. v. Comm'r of Soc. Sec.*, 2020 WL 6079234, at *5 (S.D. Ill. Oct. 15, 2020) (discussing how new regulation regarding consideration of medical opinions substantially changes that the definition of a medical opinion). Robert W. filed his claim on March 30, 2017; therefore, any medical opinion must conform to the above definition.

Dr. Sozio's letter does not contain any sort of assessment of Robert W.'s vocationally-relevant functional limitations, and therefore cannot properly be considered a "medical opinion" under the regulations. Accordingly, the ALJ was not required to address the regulatory factors used to weigh medical opinions, nor was he required to give Dr. Sozio's letter any special significance. *Minor v. Colvin*, 2015 WL 2193771, at *3 (S.D. Ind. May 11, 2015). *See also Gildon v. Astrue*, 260 F. App'x 927, 929 (7th Cir. 2008) ("An ALJ is not required to accept a doctor's opinion if it 'is brief, conclusory, and inadequately supported by clinical findings.'" (quoting *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002))).

More generally, Robert W. contends that the ALJ committed a reversible error by not considering his "complaints of significant fatigue and daytime drowsiness." [Filing No. 11 at 12.]

Robert W. cites to a sleep clinic follow-up appointment from which the same notes appear twice in the record. [Filing No. 9-4 at 140; Filing No. 9-6 at 55.] This single sleep study appointment occurred on September 27, 2016, before the date of disability, [Filing No. 9-2 at 17; Filing No. 9-4 at 141], and Robert W. had a sleepiness score of seven based on a self-administered Epworth questionnaire, [Filing No. 9-4 at 141], which is considered "higher normal daytime sleepiness." *Dierking v. Berryhill*, 2018 WL 3863531, at *2 (C.D. Ill. July 23, 2018) ("The Epworth Sleepiness Scale is a measurement of a person's degree of daytime sleepiness at a given point in time. . . . A[n Epworth] score of 0-5 indicates normal daytime sleepiness; a score of 6-10 indicates higher normal daytime sleepiness; a score of 11-12 indicates mild excessive daytime sleepiness; a score of 13-15 indicates moderate excessive daytime sleepiness; and a score of 16-24 indicates severe excessive daytime sleepiness."). *See also* List of medical rating scales, 2 Attorneys Medical Deskbook § 18:8 (an Epworth sleep score of 12 to 24 indicates excessive daytime sleepiness). Robert W. also cites to three instances where he reported experiencing fatigue: (1) a Social Security Disability Examination form dated May 2017; [Filing No. 9-4 at 53 (a general examination of Robert W.'s "systems" showing that he responded that he was experiencing fatigue)]; (2) a "Progress Note" dated March 2018, [Filing No. 9-4 at 53 (reporting that Robert W.'s symptoms associated with cirrhosis were "constipation, fatigue, diarrhea, abdominal pain, reflux")]; and (3) an electronic message from Robert W. to Dr. Sozio dated September 12, 2018, [Filing No. 9-7 at 66].

As to the first two instances, the records only show complaints of "fatigue," not "significant fatigue," which the ALJ noted. [Filing No. 9-2 at 23 ("his treatment notes do not show complaints of significant fatigue").] Therefore, those records do not support Robert W.'s argument that he complained of significant fatigue.

The third instance where Robert W. reported fatigue is his September 12, 2018 message to Dr. Sozio in which he stated he had "severe fatigue issues". [Filing No. 9-7 at 66.] On September 26, 2018, Dr. Sozio noted in a progress note that "cirrhosis is not associated with pain (and I don't think he had mentioned the pain to me based on review of my last two notes). I can write a letter attesting that cirrhosis can be associated with chronic fatigue." [Filing No. 9-7 at 68.] Also on September 26, 2018, Dr. Sozio wrote the letter, discussed above. [Filing No. 9-7 at 78.] Robert W.'s September 12, 2018 message to Dr. Sozio and Dr. Sozio's September 26, 2018 progress note and letter are the only mentions of "severe fatigue" or "significant fatigue."

Notably, the ALJ recognized that Dr. Sozio's September 26, 2018 letter was sent at Robert W.'s request. [Filing No. 9-2 at 22.] Indeed, it appears that Robert W. did not report experiencing "severe fatigue" or "significant fatigue" in the course of seeking treatment, but rather only did so after he had spoken with his attorney about this social security case—in which he had just recently been denied benefits—and in a letter to his doctor for the stated of purpose requesting "a statement on how the pain and fatigue affects me with this condition and my ability to work." [Filing No. 9-7 at 66 (Robert W.'s electronic message to Dr. Sozio stating that the SSA "sa[id] I should be able to do sedentary work. I do not agree with that assessment due to my . . . severe fatigue issues that are associated with my current NASH/Cirrhosis of the liver diagnosis").]

In sum, the ALJ properly considered Robert W.'s subjective complaints regarding fatigue and found they were not supported by or consistent with the other evidence in the record. *See William T. v. Saul*, 2019 WL 2949907, at \*6 (S.D. Ind. July 9, 2019) ("The lack of objective signs in the relevant treatment records supports the ALJ's conclusions that the opinion was based on the Plaintiff's subjective complaints and was not consistent with the record."). The ALJ stated that "the claimant's statements concerning intensity, persistence, and limiting effects of [the alleged]

symptoms are not entirely consistent with objective medical evidence." [Filing No. 9-2 at 21.] Specific to fatigue, the ALJ acknowledged the existence of Dr. Sozio's letter (and Robert W.'s request for the letter), and discounted those records based on their inconsistency with the objective medical evidence. [Filing No. 9-2 at 23.] Therefore, the ALJ's decision that Robert W.'s complaint of "severe fatigue" or "significant fatigue" was not entirely consistent with the objective medical evidence was supported by substantial evidence.

### B. The MRI

Robert W. argues that the ALJ committed a reversible error by failing to submit Robert W.'s most recent abdominal MRI to a medical review expert. [Filing No. 11 at 13.] Robert W. contends that the ALJ impermissibly "played doctor" when he reviewed the March 2018 MRI and concluded that it did not indicate any worsening in Robert W.'s ability to function without the need for additional breaks. [Filing No. 11 at 14.]

The Commissioner responds that the March 2018 MRI lacked any indication suggesting that Robert W.'s condition deteriorated such that the ALJ should have submitted the March 2018 MRI to the state agency doctors. [Filing No. 13 at 11.] Additionally, the Commissioner argues that because the ALJ has the final responsibly for determining a claimant's RFC, it was within the ALJ's authority to make inferences from all of the evidence in the record. [Filing No. 13 at 12.]

Robert W. replies that a medical expert should determine whether the March 2018 MRI indicated a worsening of his condition that would affect his RFC. [Filing No. 14 at 2.]

To craft the RFC, the ALJ is charged with weighing all of the medical evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). When necessary, an ALJ must summon a medical expert to provide an informed basis for determining whether the claimant is disabled. *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000).

10

Robert W.'s argument concerns the ALJ's consideration of a June 2017 MRI and a March 2018 MRI. Both MRIs list "findings" and "impressions." [Filing No. 9-6 at 66-67; Filing No. 9-6 at 91.] The 2017 MRI lists the findings as severe hepatic steatosis, no hepatic mass is present, and a patent portal vein. [Filing No. 9-6 at 66.] The 2017 MRI impressions were of "severe hepatic steatosis without focal mass" and "morphological contour of the liver is not overly cirrhotic." [Filing No. 9-6 at 67.] The 2018 MRI findings were of severe diffuse hepatic steatosis, no arterial enhancing liver lesion with washout, and portal vein is patent. [Filing No. 9-6 at 91.] The impressions were "1. No arterial enhancing liver lesions with washout. 2. Hepatic steatosis." [Filing No. 9-6 at 91.]

Robert W. argues that because the March 2018 MRI found "diffuse hepatic steatosis," as opposed to the June 2017 MRI which found "hepatic steatosis," his condition worsened and thus the March 2018 MRI should have been reviewed by a medical expert. [Filing No. 9-11 at 13.] However, Robert W. does not cite to or provide evidence that explains how the 2018 MRI may change the medical opinion. Rather, Robert W. relies on *Goins v. Colvin*, 764 F.3d 677, 682 (7th Cir. 2014), where the Seventh Circuit found the ALJ erred in failing to subject a more recent MRI to medical expert scrutiny. However, *Goins* is distinguishable. In *Goins*, the MRI at issue was conducted twelve years after the most recent prior MRI, and it showed that the claimant's condition had worsened significantly in the time between the MRIs. 764 F.3d at 680. Additionally, the Seventh Circuit noted that the ALJ "made no effort to compare the [recent] MRI with the earlier one, and she did not use the report of the results of that MRI as an aid to evaluating the plaintiff's testimony." *Id.* In this case, the MRIs at issue are less than a year apart, and the ALJ discussed the findings from both the June 2017 MRI and the March 2018 MRI. [Filing No.9-2 at 21 (citing Filing No. 9-6 at 66; Filing No. 9-6 at 91).]

Despite Robert W.'s argument that "the ALJ relied upon his own impermissible interpretation of the complex medical imaging in concluding it did not represent any etiology," [Filing No. 11 at 14-15], it does not appear that the ALJ simply looked at the imaging and rendered a decision based on his own analysis. Indeed, the ALJ used the exact language from the "Impressions" section of the radiology report. [*Compare* Filing No. 9-2 at 21 ("MRI showed no arterial enhancing liver lesions with washout and hepatic steatosis") *with* Filing No. 9-6 at 91 ("1. No arterial enhancing liver lesions with washout. 2. Hepatic steatosis.").] Furthermore, Robert W. does not appear to contend that the ALJ's RFC determination was rendered incorrect because the findings in the March 2018 MRI necessarily show additional limitations. Instead, he argues that the ALJ's failure to submit the March 2018 MRI to a medical expert review was erroneous because the MRI "demonstrated a potential worsening" of Robert W.'s condition. [Filing No. 11 at 14.]

The Court must review the ALJ's decision as a whole. And here, the ALJ considered other relevant medical evidence in addition to the MRIs in crafting the RFC. The ALJ found that "[i]n May 2018, [Robert W.'s] lab results were stable and his Model for End-Stage Liver Disease (MELD) score remained low," and that his October 2018 lab results were also stable. [Filing No. 9-2 at 22.] Moreover, the ALJ considered Robert W.'s visits to his primary care physician and complaints of low back pain and considered how medication and treatment impacted Robert W.'s limitations. [Filing No. 9-2 at 21-24.]

In sum, considering the ALJ's decision as a whole, the ALJ did not commit reversible error by declining to submit the March 2018 MRI to medical experts for review, and substantial evidence supports the ALJ's decision. *See Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017) (holding that it was not error for the ALJ to rely on the doctors' opinions even though they did not review two later spinal MRI reports because the claimant provided no evidence that the reports would

12

have changed the doctors' opinions); *Bush v. Astrue*, 2010 WL 76454, at *4 (S.D. Ind. Jan. 4, 2010) (remand to obtain expert medical testimony not necessary because the ALJ carefully considered the appropriate medical evidence in making his findings); *Bond v. Berryhill*, 2017 WL 1398656, at *3 (N.D. Ill. Apr. 18, 2017) (ALJ did not need to get a medical opinion to interpret a CT scan showing mild degenerative changes).

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 271 (7th Cir. 2010). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Id.* (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet*, 364 F. App'x at 274. Taken together, the Court can find no legal basis presented by Robert W. to reverse the ALJ's decision that he was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

Date: 11/9/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**